UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**DEVON DENZEL LETOURNEAU, pro se,** in his capacity as executor for **DEVON DENZEL LETOURNEAU ESTATE;** and, **CHARLES EMANUEL PORTA PONA, pro se,** in his capacity as executor for **CHARLES EMANUEL PORTER PONA ESTATE,**
    *Plaintiffs/Petitioners*

**v.**

**STATE OF RHODE ISLAND, et al.,**
    *Defendants/Respondents*

C.A. No. 1:20-cv-00269-JJM-LDA

**MOTION TO DISMISS**

NOW COMES Defendant the State of Rhode Island (the "State" or "Defendant" or "Respondent") and hereby moves to dismiss the Complaint/Petition (ECF 1), filed by Plaintiffs/Petitioners Devon Denzel Letourneau ("Letourneau") and Charles Emanuel Porter Pona ("Pona") (collectively, "Plaintiffs" or "Petitioners")[1] in the above-captioned action, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for the reasons stated herein.

**INTRODUCTION**

Plaintiffs bring this action against the State, in an attempt to secure their release from the Adult Correctional Institution ("ACI"). While difficult to parse, it appears from the Complaint that Plaintiffs have appointed themselves executors of their respective "estates." The Complaint further declares that the "estates" have acquired "Foreign Nation State Domain" in the United States

---

[1] Plaintiffs appear to have also filed another identical action and are proceeding in both matters simultaneously. See Pona v. State of Rhode Island, C.A. No. 1:20-cv-00283-JJM-LDA (D.R.I. filed June 26, 2020).

2

Minor Outlying Islands, and thus, somehow, that has divested the United States (and, apparently, the ACI) of authority over Plaintiffs. See Compl., ECF 1 at 9-10.

This too-clever-by-half scheme to get out of prison fails for a whole host of independently dispositive reasons: (1) the Court lacks subject-matter jurisdiction; (2) Plaintiffs lack standing to represent their "estates"; (3) and it is premised on erroneous legal conclusions such that it fails to state a claim. For these reasons, the State respectfully requests that this Honorable Court dismiss the Complaint (ECF 1), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## FACTS AND TRAVEL

Plaintiffs are *pro se* inmates, both serving life sentences at the ACI.[2] Apparently conceding that, pursuant to R.I. Gen. Laws § 13-6-1, Plaintiffs are civilly dead, Plaintiffs have declared themselves executors of their own respective "estates", which Plaintiffs contend are independent nations and free from the laws of the State of Rhode Island, and located at a U.S. Post Office Box in Providence, Rhode Island. See Compl., ECF 1 at 9. The Complaint further declares that the "State of Rhode Island, is a legal fictitious government de facto that may only govern legal persons of an artificial and corporate fiction status." See id. at 4. Plaintiffs appear to base this premise on

---

[2] Plaintiff Letourneau is serving a consecutive life sentence for first degree murder. See State v. Letourneau, C.A. No. P1-2011-530AG (R.I. Super. 2011). Plaintiff Pona is serving concurrent life sentence for first degree murder. See State v. Pona, C.A. No. P1-2000-869AG (R.I. Super. Ct. 2000); State v. Pona, C.A. No. P1-2002-2571AG (R.I. Super. Ct. 2002). This Court may take judicial notice of matters of public record, including documents from other court proceedings, without being required to convert a Motion to Dismiss into a Motion for Summary Judgment. See In Re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); see also Boateng v. InterAmerican University, Inc., 210 F.3d 56, 60 (1st Cir. 2000). Additionally, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000) (allows a court considering a Motion to Dismiss to consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice").

their mistaken belief that the Internal Revenue Service has authority to recognize independent foreign nations, and exercised that authority by assigning their "estates" Employer Identification Numbers.[3] See Compl., ECF 1 at 9.; contra U.S. Const. art. II, sec. 3 (granting the President the power to recognize foreign nations). Plaintiffs have also declared that their estates include "both executors' personal, physical, living, breathing, flesh, blood and bone natural body which is the property of [Plaintiffs'] estate[s]". See Compl., ECF 1 at 19.

It appears that Plaintiffs after declaring their sovereign independence from the United States, Plaintiffs mailed "letters of administration" to various Rhode Island officials,[4] claiming that their criminal convictions created "constructive trust[s]" under Title 11 of the Rhode Island General Laws.[5] See ECF 1-3, at 2. Plaintiffs allege that by declining to respond to Plaintiffs' letters, the State somehow acquiesced to contracts with Plaintiffs "estates", and those contracts unexplainedly provide for Plaintiffs to be released from the ACI. See Compl., ECF 1 at 13-14. Plaintiffs contend that they, vis-à-vis their "estates", are being held against their will and demand release from the ACI and monetary damages in the amount of $553 million. See id. at 18-22.

---

[3] An Employer Identification Number (EIN) is a nine-digit number that the IRS uses to identify the tax accounts of employers and other businesses. According to the IRS, "Employer Identification Numbers are issued for the purpose of tax administration and are not intended for participation in any other activities (e.g., tax lien auction or sales, lotteries, etc.)" See Internal Revenue Service, Apply for an EIN Online, available at: https://www.irs.gov/businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online.

[4] These Rhode Island officials include the Governor, the Attorney General, the Rhode Island Administrator of the Superior Court, and the Director of the Rhode Island Department of Corrections.

[5] Title 11 of the General Laws contains the criminal laws of the State.

## **LEGAL STANDARD**

A motion pursuant to Rule 12(b)(1) asserts that the court lacks subject matter jurisdiction over the case. Such a motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of a judgment." Arbaugh v. Y&H Corp.,546 U.S. 500, 506 (2006).

In the context of a Rule 12(b)(6) motion to dismiss, courts have interpreted this rule to require that a pleading contain sufficient facts to show an entitlement to the requested relief. Accordingly, a complaint must allege "a plausible entitlement to relief." Twombly, 550 U.S. at 559. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating whether a plaintiff's claims are entitled to relief, the court must accept as true all well-pleaded facts and indulge all reasonable inferences in plaintiff's favor. Twombly, 550 U.S. at 557.

The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008). Thus, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (1st Cir. 1998) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

In Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of

2

pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. Iqbal, 556 U.S. at 662. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 677-79. Specifically, this court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, only a complaint that states a plausible claim for relief can survive a motion to dismiss. Iqbal, 556 U.S. at 679. The Court explained that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## ARGUMENT

**I.   THE COURT LACKS SUBJECT-MATTER JURISDICTION AND MUST DISMISS THE COMPLAINT, UNDER FED. R. CIV. P. 12(b)(1)**

As a threshold matter, Plaintiffs' frivolous legal conclusions that they are the executives of foreign nations, if taken as true, would naturally deprive this Court of Article III jurisdiction and prove fatal to Plaintiffs' Complaint from the outset. See U.S. Const. art. III, sec. 2 (granting the United States Supreme Court original jurisdiction over cases between foreign officials and a State). Notwithstanding Plaintiffs' claims of sovereign citizenry, the Court respectfully still lacks jurisdiction to issue writs of mandamus to State officials and Plaintiffs lack standing to assert claims on behalf of their purported "estates".

2

**A. The Court lacks jurisdiction under 28 U.S.C. § 1361 to issue a writ of mandamus to the State and State Officials**

28 U.S.C. § 1361 authorizes federal district courts to issue writs of mandamus to only federal officials. Section 1361 provides that:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an *officer or employee of the United States* or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361 (*emphasis added*). It is clear from the plain language of 28 U.S.C. § 1361 that federal district courts do not have jurisdiction to issue writs of mandamus to direct state officials in the performance of their duties. See 28 U.S.C. § 1361; Moye v. Clerk, DeKalb Superior Court, 474 F.2d 1275, 1276 (5th Cir. 1973); Church of Scientology of Georgia, Inc. v. City of Sandy Springs, Ga., 843 F. Supp. 2d 1328, 1380 (N.D. Ga. 2012).

Here, the Complaint/Petition seeks two forms of relief: monetary damages in excess of $500 million and a writ of mandamus directing State officials to release Plaintiffs from prison— or as the Complaint characterizes it:

> [O]rdering U.S. Marshalls to seize the estate(s) from defendants' possession to be returned to the executors' offices(s). Returning the estates' [*sic*] include the release from detention and the return of both executors' personal, physical, living, breathing, flesh, blood and bone natural body which is property of [Plaintiffs'] estates' [*sic*].

See Compl., ECF 1 at 3, 19. Respectfully, this Court is without authority to issue writs of mandamus to the State[6] or State officials. See 28 U.S.C. § 1361; but see also R.I. Gen. Laws § 8-2-16 (authorizing the Rhode Island Superior Court to issue writs of mandamus to state officials). Moreover, mandamus may not issue where another remedy at law exits, such as *habeas corpus*.

---

[6] To the extent that the Complaint seeks mandamus directly against the State, it is barred by the Eleventh Amendment. See U.S. Const. amend. XI; cf also Short v. Murphy, 368 F.Supp. 591, *affirmed* 512 F.2d 374.

See Mauran v. Smith, 8 R.I. 192, 206 (1865) ("The writ of mandamus is not the proper remedy to effect the release of a man under arrest, or unlawfully imprisoned[.] The writ of *habeas corpus* is that remedy.") (*emphasis in original*); see also Ex parte Burford, 7 U.S. 448 (1806) ("there is a vast difference between a *mandamus* and a writ of *habeas corpus*. The former is a high prerogative writ, issuing at the discretion of the court, but this is a writ of right, and cannot be refused.") (*emphasis in original*). Plaintiffs do not challenge their convictions or sentences and have not sought post-conviction relief through *habeas corpus*.[7] Accordingly, such a question is not before the Court, because the Complaint makes clear that Plaintiffs seek writs of mandamus. See Compl., ECF 1 at 3 (citing 28 U.S.C. § 1651). Nevertheless, in the absence of mandamus authority under 28 U.S.C. § 1361, the Court must dismiss the Complaint (ECF 1).

To the extent that Plaintiffs seek damages under 42 U.S.C. § 1983, Plaintiffs are barred from recovering damages against the State. See generally Will v. Michigan. 491 U.S. 58, 71 (1989); Johnson v. Rodrigues, 943 F.2d 104, 108 (1st Cir. 1991) ("[i]t is settled beyond peradventure…that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action."). Plaintiffs' request for damages fail as a matter of law.

### B. Plaintiffs lack standing to represent or administer their own estates

Article III of the United States Constitution restricts a federal court's jurisdiction to certain "Cases" and "Controversies." See U.S. Const. art. III. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 406 (2013) (internal quotes omitted). To show standing, plaintiffs "'allege[ ] such a *personal stake* in the outcome of the controversy' as to warrant [their] invocation

---

[7] Although, any attempt by Plaintiffs to seek post-conviction relief through petitions for *habeas corpus* would likely be time-barred. See 28 U.S.C. § 2263.

of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (*emphasis added*). In other words, plaintiffs must demonstrate an injury-in-fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action." Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 130 (2010)). The U.S. Supreme Court has emphasized that federal courts should be especially rigorous when deciding issues of standing, when reaching the merits of the dispute would force the court to decide whether an action taken by another branch of government was unconstitutional. See Clapper, 568 U.S. at 408-09. In the First Circuit, a party's standing is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Blum, 744 F.3d at 795 (affirming a Massachusetts district court's dismissal of a case for lack of subject matter jurisdiction based on standing). The party invoking Article III jurisdiction bears the burden of establishing standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, (1992).

To the extent that the Court may exercise jurisdiction over the instant action, Plaintiffs nevertheless lack standing. Plaintiffs in the instant action are proceeding *pro se* and are prohibited from representing any other party, including their own purported "estates". See DRI LR 205(a)(2) ("An individual appearing pro se *may not represent any other party* and may not authorize any other individual who is not a member of the bar of this Court to appear on his or her behalf."). Courts in this District have consistently enforced this Local Rule. See Jacobowitz v. YMCA, 2016 WL 1259397, at *1 (D.R.I. March 30, 2016); see also Harris v. Perry, 2015 WL 4879042, at *4 (D.R.I. July 15, 2015); Young v. Wall, 228 F.R.D. 411, 412 (D.R.I. 2005). Plaintiffs Letourneau and Pona do not allege that they have personally suffered concrete and particularized injuries; rather, Plaintiffs allege that the injured parties are their purported estates—which respectfully, do

2

not exist under State probate law. See Compl., ECF 1 at 12. Even if Plaintiffs' estates were recognized under Rhode Island law, Plaintiffs are nevertheless barred by the Local Rules from representing the legal interests of those estates before this Federal Court. See DRI LR 205(a)(2). As such, Plaintiffs fail to demonstrate concrete and particularized injuries and therefore, lack standing.

## II. THE COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW AND SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)

To the extent that Plaintiffs attempt to assert claims for violation of the Contract Clause of the United States Constitution, Plaintiffs' claims fail as a matter of law. The Contract Clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. "Although the wording of the Contract Clause appears uncompromising[,] ... the Supreme Court does not interpret it as an absolute bar on the impairment of either governmental or private contractual obligations." Parker v. Wakelin, 123 F.3d 1, 4 (1st Cir. 1997). The analysis proceeds in two steps. First, the court must ask "whether a change in state law has resulted in the substantial impairment of a contractual relationship." Maine Ass'n of Retirees v. Bd. of Trustees of Maine Pub. Employees Ret. Sys., 758 F.3d 23, 29 (1st Cir. 2014) (quoting Parker, 123 F.3d at 4-5)) (internal quotation marks omitted).The first inquiry itself "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Gen. Motors Corp. v. Romein, 503 U.S. 181, 186, (1992). If the court resolves the first question in the affirmative, the court may proceed onto the second inquiry: whether the impairment nevertheless "is reasonable and necessary to serve an important public purpose." Id. (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977)); see also Maine Ass'n of Retirees, 758 F.3d at 29.

2

Here, Plaintiffs' Contract Clause claim fails from the outset. The Complaint does not allege any facts that remotely suggest the existence of a valid and enforceable contract or that the State enacted any legislation impairing any alleged contractual relationship. Rather, the Complaint asserts through a series of nonsensical legal conclusions that, in the absence of any of the fundamental requirements to form a legally binding agreement, various State officials acquiesced into a contract by declining to respond to Plaintiffs' "letters of administration" demanding Plaintiffs' release from the ACI. See Compl., ECF 1 at 18, 13. Not only does the Complaint fail to assert any essential components to form a valid and enforceable agreement under Rhode Island contract law,[8] but the allegations are circular, paradoxical, and frivolous. For example, the Complaint concedes that Plaintiffs are civilly dead under R.I. Gen. Laws § 13-6-1 and are the administrators of their own purported "estates", which Plaintiffs' also derive from their civilly dead status, but which also prohibits Plaintiffs from entering into contracts. In any event, because Rhode Island contract law prohibits Plaintiffs from entering into valid and enforceable agreements, Plaintiffs cannot demonstrate the existence of a contractual relationship. See R.I. Gen. Laws §§ 13-6-1, 13-6-3; see also Gen. Motors Corp., 503 U.S. at 186. Additionally, the non-existence of any contractually impairing legislation is likewise fatal to Plaintiffs' claims. see also Gen. Motors Corp., 503 U.S. at 186. As such, Plaintiffs' Contract Clause claim fails as a matter of law and must be dismissed.

---

[8] The Court must apply Rhode Island contract law. See Marrero-Garcia v. Irizarry, 33 F.3d 117, 121–22 (1st Cir. 1994); see also R.I. Gen. Laws §§ 13-6-1, 13-6-3 ("No person who shall be sentenced to imprisonment in the adult correctional institutions shall have any power, during his or her imprisonment, to make a will, or any conveyance of his or her property, or of any part of that property, except by permission of the superior court granted on petition for that power, and on the notice and terms, if any, that the court shall prescribe.").

## CONCLUSION

WHEREFORE, the State respectfully requests this Honorable Court grant its Motion and dismiss the Complaint (ECF 1) with prejudice.

        Respectfully Submitted,

        STATE OF RHODE ISLAND,
        DEPARTMENT OF CORRECTIONS,
        By:

        PETER F. NERONHA
        ATTORNEY GENERAL

        */s/ Justin J. Sullivan*
        Justin J. Sullivan (Bar No. 9770)
        Special Assistant Attorney General
        Rhode Island Office of the Attorney General
        150 S. Main St. Providence, RI 02903
        Tel: (401) 274-4400 | Ext. 2007
        Fax: (401) 222-2995
        jjsullivan@riag.ri.gov

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the within document was filed via the ECF filing system on Monday, October 26, 2020 and that it is available for viewing and downloading. I also hereby certify that I mailed a copy of the foregoing document by first class mail, postage prepaid on Monday, October 26, 2020 to:

| **Devon Denzel Letourneau** | **Charles Emanuel Porter Pona, pro se** |
|---|---|
| Rhode Island Department of Corrections | Rhode Island Department of Corrections |
| C/O Devon Denzel Letourneau | C/O Charles Emanuel Porter Pona |
| Maximum Security Prison | Maximum Security Prison |
| Cranston, RI 02920 | Cranston, RI 02920 |

        */s/Colleen Cole*

2